NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TODD HOWARD,<br><br>      Plaintiff,<br>v.<br><br>GBG USA INC. d/b/a GLOBAL BRANDS GROUP,<br><br>      Defendant. | Civil Action No. 18-4783 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant GBG USA Inc. d/b/a Global Brands Group's Motion to Dismiss Plaintiff Todd Howard's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5). Plaintiff has filed opposition and Defendant has replied thereto. (ECF Nos. 8, 9). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, Defendant's motion is granted.

## I.   BACKGROUND[1]

Plaintiff, a New Jersey citizen, was an employee of Defendant, a corporation that manufactures garments, sporting goods, and promotional merchandise, and has a principal place of business in New York. (Compl. ¶¶ 1–2). Plaintiff stopped working for Defendant on or about May 31, 2017. (Compl. ¶ 4). The parties subsequently engaged in discussions regarding severance pay due to Plaintiff. (Compl. ¶ 5–6). Plaintiff claims that the parties intended to provide him "with the security of knowing that he would be guaranteed $50,000 per month . . . for a full twelve

---

[1] This record is derived from Plaintiffs' Complaint, (ECF No. 1, Ex. A ("Compl.")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

months, even if [Plaintiff] ultimately secured new employment, but at a rate less than $50,000 per month." (Compl. ¶ 10). The result of the parties' discussion was memorialized in a Separation Agreement, which provides, in relevant part:

> 2. **Severance Payments**. In consideration for your execution of this Separation Agreement and General Release and in exchange for the promises, covenants, releases and waivers herein, provided you agree to and accept the terms of this Separation Agreement and do not timely revoke your acceptance, the Company agrees to pay you the sum of three hundred thirteen thousand three hundred eighty-two dollars ($313,382.00) which represents an additional six (6) months of your current base annual salary plus an amount equal to six (6) months COBRA medical, dental and vision coverage upon the same terms as your present coverage (the "Severance Payment"). Your Severance Payment will be paid out on the first pay period to occur after both parties have signed this Separation Agreement and the revocation period described below in paragraph 8(i) has expired. This will be a lump sum payment in accordance with the Company's normal payroll practices and shall be subject to deductions for withholding taxes, payments for social security and other deductions consistent with requirements of law.
>
> 3. **Additional Payment**. In the event you have not obtained new employment (whether such employment is as an employee, consultant or agent) by November 30, 2017, then, for the six month period commencing on and after December 1, 2017 and ending on May 31, 2018, the Company agrees to pay you the sum of fifty thousand dollars ($ 50,000.00) each month (the "Monthly Installment") together with an amount equal to your monthly COBRA premium coverage cost, if elected. Any payments under this paragraph 3 shall terminate upon commencement of your new employment; provided, however, if the monthly salary or other compensation you receive from any new employment ("New Compensation") is less than the Monthly Installment, the Company will pay to you the difference between the Monthly Installment and the New Compensation. To be eligible to receive any payments of the Monthly Installment, you need to provide the Company with such proof as it reasonably request as to your employment status. For the avoidance of doubt, in no event will the aggregate payments made to you under this paragraph 3 exceed fifty thousand dollars ($ 50,000.00) per month plus any monthly COBRA premium coverage cost, if applicable. All payments under this paragraph 3 shall be made in accordance with the Company's normal payroll practices and shall be subject to deductions for withholding taxes, payments for social security and other deductions consistent with requirements of law.

(ECF No. 5-1, Ex. A ("Separation Agreement") ¶¶ 2–3). The Separation Agreement also states that it is governed by the laws of the State of New York, contains the entire agreement between the parties concerning this matter, and supersedes all previous agreements. (Separation Agreement

¶ 10). The parties executed the Separation Agreement on June 7, 2017, and Plaintiff received the severance payment outlined in the second paragraph of the agreement ("Paragraph 2"). (Compl. ¶¶ 13–14). On or around July 1, 2017, Plaintiff began working for LXR and Co. ("LXR"), where he receives $20,000 per month. (Compl. ¶ 15). In January 2018, Plaintiff contacted Defendant and requested payment of the difference between his new compensation and the monthly instalments contemplated by the third paragraph of the Separation Agreement ("Paragraph 3"), which equals approximately $30,000 per month for six months, or around $180,000 total. (Compl. ¶ 16). Defendant has not remitted these payments to Plaintiff, which Plaintiff claims is a violation of the Separation Agreement. (Compl. ¶ 17).

Accordingly, Plaintiff filed an action in New Jersey Superior Court, Law Division, Bergen County, against Defendant for money allegedly owed to him under the Separation Agreement. (*See* Compl.). Plaintiff asserted the following causes of action against Defendant: (I) Breach of Contract; (II) Breach of the Duty of Good Faith and Fair Dealing; (III) Promissory Estoppel; and (IV) Unjust Enrichment. (Compl. ¶¶ 18–32). On March 29, 2018, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441(a). (ECF No. 1).

## II.   LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. ANALYSIS

The main issue before the Court is whether Plaintiff has alleged a *prima facie* cause of action for breach of contract, based on his allegations that Defendant did not pay Plaintiff the difference between the amount he earns per month at LXR and the $50,000 monthly installments articulated in Paragraph 3. As noted above, the Separation Agreement is governed by New York state law. (Separation Agreement ¶ 10). Under New York law, a breach of contract occurs when: (1) there is a contract; (2) plaintiff performs pursuant to the contract; (3) defendant breaches his or her obligation under the contract; and (4) damages result. *Dee v. Rakower*, 112 A.D.3d 204, 208–09 (N.Y. App. Div. 2013). In interpreting a written contract, the Court will read the agreement "as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." *Westmoreland Coal Co. v. Entech, Inc.*,

100 N.Y.2d 352, 358 (2003) (quoting *Empire Props. Corp. v. Mfr. Tr. Co.*, 288 N.Y. 242, 248 (1942)). Furthermore, the Court should construe the contract's meaning in accordance with the intent of the parties, which is best shown by the terms of the agreement. *Innophos, Inc. v. Rhodia S.A.*, 10 N.Y.3d 25, 29 (2008) (citations omitted); *see also Civilized People, Inc. v. Milk St. Café, Inc.*, 129 A.D.3d 761, 762 (N.Y. App. Div. 2015) (explaining that the existence of a binding contract is not dependent on the subjective intent of either contracting party, but is determined by the objective manifestation of the parties' intent) (citing *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399 (1977)). Therefore, a contract that is complete, clear, and unambiguous on its face will be enforced pursuant to its plain meaning. *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002).

The relevant contract in this case is the Separation Agreement, and specifically Paragraphs 2 and 3. Upon reviewing the Separation Agreement, the Court finds that it is clear and unambiguous. As discussed above, Paragraph 2, which is titled "Severance Payments," states that Defendant is required to pay Plaintiff the sum of $313,382, which "represents an additional six (6) months of [Plaintiff's] current base annual salary."[2] (Separation Agreement ¶ 2). Paragraph 3, which is titled "Additional Payment," contains two key sentences. (*Id.* ¶ 3). The first sentence states, "[i]n the event [Plaintiff did not obtain] new employment . . . by November 30, 2017, then, for the six month period commencing on and after December 1, 2017 and ending on May 31, 2018, [Defendant agreed] to pay [Plaintiff] the sum of fifty thousand dollars . . . each month (the 'Monthly Installment')." (*Id.*). The second sentence states that "[a]ny payments *under this paragraph 3* shall terminate upon commencement of [Plaintiff's] new employment; provided, however, if the monthly salary or other compensation [Plaintiff] receive from any new

---

[2] There is no dispute regarding Paragraph 2, as Defendant remitted the $313,382 severance payment to Plaintiff. (Compl. ¶ 14).

5

employment ('New Compensation') is less than the Monthly Installment, [Defendant would] pay to [Plaintiff] the difference . . . ." (*Id.* (emphasis added)). When reading both sentences in conjunction, it is obvious that Plaintiff is entitled to the payments articulated in Paragraph 3, which includes the difference between the amount he makes at LXR and the $50,000 monthly installments, *only if* he did not obtain employment before November 30, 2017, as required by the first sentence of Paragraph 3.

The Court finds that the language used in the Separation Agreement is clear and cannot reasonably be given any other meaning. Plaintiff argues that the circumstances surrounding the agreement create an ambiguity, because the parties intended for him to receive severance payments equal to one year of his annual salary, regardless of when he obtained new employment.[3] (ECF No. 8 at 8–9). However, Plaintiff's argument disregards the first sentence of Paragraph 3, which conditions the payment of the $50,000 monthly installments on Plaintiff not finding a job before November 30, 2017. (Separation Agreement ¶ 3). Additionally, the Court need not look to extrinsic evidence of the parties' intent when same can be discerned by the plain and unambiguous language of the Separation Agreement. *See Willsey v. Gjuraj*, 65 A.D.3d 1228, 1230 (App. Div. 2009) (stating that, absent any ambiguity in the agreement, the intent of the parties must be found "within the four corners of the contract") (citations omitted); *see also Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 1989) (explaining that, under New York law, the plain language of a contract does not become ambiguous merely because a party urges for a different interpretation) (citations omitted). Here, it is clear to the Court that the parties intended for Plaintiff to receive severance payments equal to six-months of his annual salary, pursuant to Paragraph 2, and, in the event that Plaintiff could not find a job within six months of his separation

---

[3] Plaintiff does not specify what these surrounding circumstances are. (*See* ECF No. 8 at 8–9).

6

from Defendant, for Plaintiff to receive severance payments equal to an additional six-months of his annual salary, as articulated in Paragraph 3.[4] Therefore, the Court will construe the Separation Agreement in accordance with its plain and unambiguous meaning.

Pursuant to the Separation Agreement, Defendant was required to pay Plaintiff the initial severance payment of $313,382, and to pay Plaintiff an additional $50,000 per month for six months if he did not receive employment before November 30, 2017. (*See* Separation Agreement). This additional payment would terminate if Plaintiff obtained employment after November 30, 2017 and earned $50,000 or more per month, but would continue if he obtained employment after November 30, 2017 and earned less than $50,000 per month. (*Id.*). In the latter situation, Plaintiff would be entitled to the difference between $50,000 and his new salary. (*Id.*). Because Plaintiff acknowledged that he began working for LRS around July 1, 2017, (Compl. ¶ 15), which was before November 30, 2017, Defendant was not required under the Separation Agreement to pay Plaintiff the additional severance payment articulated in Paragraph 3. The fact that Plaintiff is making less than $50,000 per month at LXR is not relevant, because Plaintiff did not meet the threshold requirement in order to receive the additional severance payment, *i.e.*, not obtaining employment before November 30, 2017. Therefore, Plaintiff has not alleged any facts that show Defendant breached the Separation Agreement. Accordingly, Plaintiff's breach of contract claim must be dismissed with prejudice.

---

[4] Plaintiff claims that it is commercially unreasonable to interpret Paragraph 3 in this way, because such an interpretation gives Plaintiff an inverse incentive to purposefully not seek employment until after November 30, 2017 in order to receive the additional severance payments. (ECF No. 8 at 8). The Court does not agree with Plaintiff, as it is reasonable to conclude that Paragraph 3 was included in order to insulate Plaintiff from any losses he would incur if he was unable to obtain employment for six-months or more. *See Abiele Contracting, Inc. v. N.Y.C. Sch. Constr. Auth.*, 91 N.Y.2d 1, 9–10 (1997) ("[W]here the parties have agreed to conduct themselves in accordance with the rights and duties expressed in a contract, a court should strive to give a fair and reasonable meaning to the language used").

Plaintiff's remaining claims for breach of the covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment must also be dismissed with prejudice. Under New York law, a claim for breach of the covenant of good faith and fair dealing should be dismissed as duplicative when it arises out of the same facts and seeks the same damages as a claim for breach of contract. *See Mill Fin., LLC v. Gillett*, 122 A.D.3d 98, 104 (App. Div. 2014); *Baer v. Complete Office Supply Warehouse Corp.*, 89 A.D.3d 877, 878 (App. Div. 2011). Similarly, the existence of a valid and enforceable contract usually precludes recovery for claims in *quasi* contract based on the same subject matter, which includes collateral estoppel or unjust enrichment. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Comp., et al.*, 70 N.Y.2d 382, 388 (1987). Here, Plaintiff acknowledges that the Separation Agreement is an enforceable contract entered into by the parties. (Compl. ¶ 19). Moreover, Plaintiff's breach of the covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment claims are based on the same underlying facts as his breach of contract claim. Specifically, all of Plaintiff's claims pertain to, and seek damages for, Defendant's failure to remit any severance payments articulated in Paragraph 3. (Compl. ¶¶ 18–32). Therefore, the Court grants Defendant's Motion to Dismiss Plaintiff's remaining claims, as said claims are duplicative of Plaintiff's claim for breach of contract.

## IV. **CONCLUSION**

For the aforementioned reasons, Defendant's Motion to Dismiss Plaintiff's Complaint is hereby granted. An appropriate Order follows this Opinion.

Date: June 20ᵗ, 2018

JOSE L. LINARES
Chief Judge, United States District Court